# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Safeco Insurance Company of America, | Case No.: 2:20-cv-01579-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting Partial Summary Judgment in Favor of Safeco and Denying Powermax's Motion to Dismiss** |
| Air Vent, Inc., et al., | |
| Defendants | [ECF Nos. 62, 69, 77] |
| and all other parties and claims | |

Roger Himka purchased from Home Depot and installed in his home an attic-cooling fan that ultimately failed, causing a fire and damage to his home. He filed a claim with his home insurer plaintiff Safeco Insurance Company of America, which covered the damage and paid Himka $250,581.60. In an effort to recoup that loss, Safeco sues the fan's manufacturer, Air Vent, Inc., for negligence and strict products liability. Air Vent in turn filed a third-party complaint against component-part manufacturers and distributors Powermax Electric Company; Chien Luen Industries; and King of Fans, Inc., alleging that the third-party defendants are jointly and vicariously liable to Air Vent if the fan is found to be defective and Air Vent liable to Safeco. Air Vent and Safeco now crossmove for summary judgment on the products-liability claim, and Powermax moves to dismiss for lack of personal jurisdiction. Because Air Vent's motion relies on law inapplicable to a product-defect claim, I deny it. But I grant partial summary judgment in Safeco's favor because it has established that no material factual disputes exist and that it is entitled to judgment as a matter of law. I deny Powermax's motion to dismiss because I find that the company is subject to this court's specific personal jurisdiction. And I refer this case to the magistrate judge for a mandatory settlement conference.

**Discussion**

**I.      Safeco and Air Vent's crossmotions for summary judgment [ECF Nos. 62, 69]**

**A.      Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1]  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[2]  A fact is material if it could affect the outcome of the case.[3]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[4]  So the parties' burdens on an issue at trial are critical. When the movant bears the burden of proof, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[5]  If it does, the burden shifts to the nonmoving party, who "must present significant probative evidence tending to support its claim or defense."[6]  But when the moving party does not bear the burden of proof on

---

[1] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure (FRCP) 56.  *See* Fed. R. Civ. P. 56(a).  Although Safeco and Air Vent don't style their motions as ones for partial summary judgment, because it appears that neither mentions the negligence claim, I construe them as requesting summary judgment on the products-liability claim only.

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[3] *Id.* at 249.

[4] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[5] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

[6] *Id.*

2

1   the dispositive issue at trial, it is not required to produce evidence to negate the opponent's

2   claim—its burden is merely to point out the evidence showing the absence of a genuine material

3   factual issue.[7]  The movant need only defeat one element of a claim to garner summary judgment

4   on it because "a complete failure of proof concerning an essential element of the nonmoving

5   party's case necessarily renders all other facts immaterial."[8]  "When simultaneous cross-motions

6   for summary judgment on the same claim are before the court, the court must consider the

7   appropriate evidentiary material identified and submitted in support of"—and against—"both

8   motions before ruling on each of them."[9]

9          **B.     Safeco is entitled to summary judgment on its products-liability claim.**

10                  ***1.     This fan defect is a product defect, not a construction defect.***

11          In its summary-judgment motion, Air Vent contends that the damage to the Himka home

12   caused by the defective fan gives rise to a construction-defect claim under Nevada Revised

13   Statutes (NRS) Chapter 40, which contains a pre-suit notice-and-opportunity-to-repair

14   requirement that Safeco did not satisfy.[10]  That failure, Air Vent argues, is "[f]atal" to Safeco's

15   claims and thus the court must grant Air Vent summary judgment on them.[11]  Safeco responds

16

17

18   _____

[7] *Celotex*, 477 U.S. at 323.

19   [8] *Id.* at 322.

20   [9] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

21   [10] ECF No. 62.  NRS Chapter 40 defines constructional defect as "includ[ing], without limitation, the design, construction, manufacture, repair[,] or landscaping of . . . an alteration of or addition
22   to an existing residence [that] presents an unreasonable risk of injury to a person or property; or [that] is not completed in a good and workmanlike manner and proximately causes physical
23   damage to the residence . . . ."  Nev. Rev. Stat. § 40.615.

[11] ECF No. 62 at 7–8.

that Air Vent misconstrues its claims and that, under the Restatement (Second) of Torts, a defect in a fan is a defect in a product and not in construction, so Chapter 40 is inapplicable here.[12]

"[W]hether a particular item or instrumentality is a product for purposes of strict liability" is a question of law.[13]  Nevada courts look to the Second and Third Restatements of Torts for guidance on products-liability law.[14]  Under the Third Restatement, "[a] product is tangible personal property distributed commercially for use or consumption."[15] And comment d to § 402A of the Second Restatement includes as products "an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and . . . insecticide."[16]  More than 20 years ago, in *Calloway v. City of Reno*, the Nevada Supreme Court excluded buildings from the definition of "product," overruling a previous decision that held a contractor liable for installing a leaky gas-line fitting while remodeling a home.[17]  In so doing, the Court noted that, under the Second Restatement, only product sellers and manufacturers—not contractors—are subject to strict products liability.[18]  And it cited to "some very real differences between mass-produced goods and buildings and their respective methods of production.  The

---

[12] ECF No. 68 at 2.

[13] *Schueler v. Ad Art, Inc.*, 472 P.3d 686, 691 (Nev. App. 2020) (citing Restatement (Third) of Torts: Prod. Liab. § 19 cmt. a (Am. Law Inst. 1998)).

[14] *Id.*; *Calloway v. City of Reno* (*Calloway II*), 993 P.2d 1259, 1270–71 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004) (citing Restatement (Second) of Torts § 402A (Am. Law Inst. 1965)).

[15] Restatement (Third) of Torts: Prod. Liab. § 19.

[16] Restatement (Second) of Torts § 402A cmt. d.

[17] *Calloway II*, 993 P.2d at 1272.

[18] *Id.* (citing Restatement (Second) of Torts § 402A).

4

raising of a building and the assembly-line manufacturing of a product are not analogous processes,"[19] it reasoned.

Although Nevada courts have never explicitly held that a mass-produced fan installed in a residential attic is a product under Nevada law, I find that it is. Himka purchased tangible property—a prefabricated fan—from a commercial distributor, and the installation of that product did not amount to construction under any reasonable interpretation of the word. An attic-cooling fan is akin to an external appliance like a gas stove or water heater, both of which the Second Restatement explicitly characterizes as products subject to strict products liability.[20] It is not integrated into the structure or systems of the home. And the uncontroverted record establishes that this defect occurred during manufacturing and was caused by the wiring contained within the fan's motor.[21] Safeco's claims are thus for a product defect, not a construction defect, so Chapter 40 and its notice-and-opportunity-to-repair requirement does not apply. Accordingly, I deny Air Vent's motion.

### 2. The expert reports show that no material factual disputes exist, and Safeco has established every element of its products-liability claim.

"Although manufacturers are not insurers of their products, [if] injury is caused by a defective product, responsibility is placed upon the manufacturer and the distributor of the defective product rather than on the injured consumer."[22] To succeed on a strict-products-

---

[19] *Id.* (quoting Edie Lindsay, *Strict Liability and the Building Industry*, 33 Emory L.J. 175, 184–91 (1984)).

[20] *See* Restatement (Second) of Torts § 402A cmt. d.

[21] ECF No. 69 at 3 (citing *id.* exh. B at 25 (expert report noting that the "evidence is overwhelmingly consistent with a failure of the [fan] motor"); *id.* exh. C at 58 (expert report noting that the thermal cut-off leads were "too long," and the issue was "caused by an issue with the installation of the thermal cut[-]off" inside the fan motor during manufacturing)).

[22] *Allison v. Merck & Co.*, 878 P.2d 948, 952 (Nev. 1994).

liability claim in Nevada, a consumer plaintiff must establish that (1) the product had a defect that rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury.[23]  A product is defective if it "fail[s] to perform in the manner reasonably . . . expected in light of [its] nature and intended function and was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community."[24]

Citing to expert reports produced by both parties, Safeco states that it is undisputed that (1) "[t]he thermal cut[-]off for the fan motor had leads that were too long for their specific application" in the fan and could lead to fires;[25] (2) "Air Vent purchases all electrical components included in its fans as completed, ready-to-install units" that were not altered before the fire;[26] and (3) the Himka fire "originated from the subject fan," causing damage to the home.[27]  Air Vent agrees that it purchases its fans' electrical components as complete units, but it challenges the expert reports supporting the first and third facts as inadmissible on summary judgment.[28]  Air Vent otherwise does not present a different version of the facts.

Air Vent's objections to the reports' admissibility are based on an outdated summary-judgment standard.  While it is true that, before 2010, "unauthenticated documents [couldn't] be

---

[23] *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev. 1992) (citing *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135 (1970)).

[24] *Stackiewicz v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 928 (Nev. 1984) (quoting *Ginnis*, 470 P.2d at 138)).

[25] *See supra* note 20.

[26] ECF No. 69 at 3 (citing *id.* exh. G at 79 (Air Vent's response to interrogatory no. 3))

[27] *Id.* (citing *id.* exh. C at 60 (expert report concluding that "[t]he fire was a result of the internal failure of the fan motor, which ignited nearby combustible structural components")).

[28] ECF No. 84 at 3.

considered in a motion for summary judgment,"[29] an amendment to FRCP 56 "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment.[30]  The rule now mandates only that the *substance* of the proffered evidence be admissible at trial.  As the Ninth Circuit recently clarified, "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."[31]  Because Safeco's "expert witnesses can testify about the opinions expressed in their expert reports,"[32] those exhibits are properly considered at this stage, and they are uncontroverted.  Thus, no material factual disputes exist about Safeco's products-liability claim, so I grant its motion for summary judgment on it.

## II.     Powermax's motion to dismiss [ECF No. 77]

### A.     Personal-jurisdiction standard

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts,"[33] and FRCP 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction.[34]  To determine its jurisdictional reach, a federal

---

[29] *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (cleaned up).

[30] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[31] *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir.), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021).

[32] *Id.*; ECF No. 88 at 7 (noting that the "expert will testify in court as to his opinions").

[33] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[34] Fed. R. Civ. P. 12(b)(2).

court must apply the law of the state in which it sits.[35]  Because Nevada's long-arm statute reaches the constitutional zenith,[36] the question is whether jurisdiction "comports with the limits imposed by federal due process."[37]  A court may only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[38]

Powermax, a Chinese company, moves to dismiss for want of personal jurisdiction, arguing that it lacks sufficient contacts with Nevada to be haled into court here.[39]  The parties don't dispute that this court lacks general personal jurisdiction over Powermax, so I need only evaluate whether this court maintains specific jurisdiction over it.[40]  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[41]  This means that "the plaintiff cannot be the only link between the defendant and the forum"[42] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum [s]tate."[43]  Courts in the Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[44]  The plaintiff bears the burden

[35] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[36] Nev. Rev. Stat. § 14.065.

[37] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[38] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[39] ECF No. 77.

[40] ECF No. 86 at 3.

[41] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[42] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[43] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[44] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

of satisfying the first two by showing that (1) the defendant "purposefully direct[ed its] activities

toward the forum," and (2) the claim "arises out of or relates to the defendants' forum-related

activities."[45]   An insufficient showing at any prong requires dismissal,[46] but if the plaintiff meets

its burden, the defendant can only defeat jurisdiction if it "present[s] a compelling case" that

jurisdiction would be unreasonable.[47]   "Unless directly contravened, [the plaintiff's] version of

the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must

be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for

personal jurisdiction exists."[48]

To establish purposeful direction, a plaintiff must show that the defendant (1) "committed

an intentional act," (2) "expressly aimed at the forum state," (3) "causing harm that the defendant

kn[ew was] likely to be suffered in the forum state."[49]   The intentional-act prong requires "intent

to perform an actual, physical act in the real world" and an "external manifestation of" that

intent.[50]   Express aiming requires something more than just "untargeted negligence"; the

---

[45] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted). Courts generally apply the purposeful-availment test to suits sounding in contract or negligence, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018). This lawsuit sounds in tort, so I do not address the purposeful-availment test.

[46] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

[47] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[48] *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (cleaned up).

[49] *Axiom Foods*, 874 F.3d at 1069 (citations omitted).

[50] *Schwarzenegger*, 374 F.3d at 806 (citation omitted).

defendant's conduct must be intended to reach a person "whom the defendant knows to be a resident of the forum state."[51]  And the harm prong requires that the defendant's actions be "performed for the very purpose of having their consequences felt in the forum state."[52]

**B.    Powermax is subject to this court's specific personal jurisdiction.**

Powermax compares its presence in this case to that of the Japanese Asahi Metal Industry Company in the hallmark Supreme Court case of *Asahi Metal Industry Co. v. Superior Court of California, Solano County*.[53]  In *Asahi*, after a deadly motorcycle accident allegedly caused by a defective tire, one of the injured individuals sued the tire-tube manufacturer, which then filed a third-party complaint for indemnification from Asahi, the tube-valve-assembly manufacturer.[54] Because Asahi had "manufactured, sold, and delivered" the tire-tube-valve assembly outside the United States, the Supreme Court found that a California court's exercise of personal jurisdiction over the company was unreasonable: "Asahi does not do business in California.  It has no office, agents, employees, or property in California.  It does not advertise or otherwise solicit business in California.  It did not create, control, or employ the distribution system that brought its valves to California. . . .  There is no evidence that Asahi designed its product in anticipation of sales in California."[55]  Nor did Asahi "market[ its] product through a distributor who has agreed to serve

---

[51] *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087–88 (9th Cir. 2000), overruled in part on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc).

[52] *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

[53] *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102 (1987).

[54] *Id.* at 105–08.

[55] *Id.* at 112–13.

as [its] sales agent in" California.[56]  So Asahi had not purposefully taken any action to avail itself of the forum state's market.

Air Vent responds that this court has personal jurisdiction over Powermax by virtue of its various American motor-distribution contracts, its longstanding relationships with nationwide retailers—including Home Depot, where Himka purchased the fan in question—its use of an American alter ego to facilitate those relationships, and its insuring its motors worldwide and specifically in the United States.[57]  These actions and relationships, Air Vent argues, make Powermax less akin to Asahi and more akin to Ford Motor Company in the Supreme Court's recent *Ford Motor Company v. Montana Eighth Judicial District Court* case.[58]  In *Ford*, the High Court found Montana and Minnesota courts' exercise of personal jurisdiction over Ford reasonable although the allegedly defective cars in that case were designed, manufactured, and originally sold in states other than those two.[59]  The Court held that the specific-personal-jurisdiction inquiry did not require that Ford's contacts with the forum states have a causal link to the plaintiffs' claims, so long as its substantial business relationships in those states "relate[d] to" the lawsuits it faced there.[60]  Ford had "advertised, sold, and serviced [the] two car models [that were the subject of the litigation] in both [s]tates for many years," thus "systematically serv[ing] a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those [s]tates."[61]  It did not matter, the Court concluded, that

---

[56] *Id.* at 112.

[57] *See* ECF No. 86.

[58] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

[59] *Id.* at 1022.

[60] *Id.* at 1026–30.

[61] *Id.* at 1028.

Ford first sold the allegedly defective cars outside the fora, "with consumers later selling them to the [s]tate[s'] residents."[62]

Haling foreign companies like Asahi and Powermax into American courts presents "unique burdens" not necessarily present with companies like Ford, and it requires a "careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case."[63]  But although Powermax's situation is not analogous to Ford's, neither is it to Asahi's.  According to documents produced by Direct Marketing Asia, one of Powermax's American agents, Powermax and its American co-defendant King of Fans present themselves as alter egos of one another. King of Fans identifies Powermax's Guangdong, China, address as its own in shipping documents, and it designates that address as one of its "Asian Headquarters" on its website.[64]  In its supplier-buying agreement with Home Depot, King of Fans noted that it and Powermax have been a joint venture since 1990 and there's a shared-ownership arrangement between them.[65] That agreement shows Nevada as a state in which it is effective.[66]  And all the Powermax-manufactured motors Air Vent purchased—through Direct Marketing Asia or directly from Powermax—were shipped to Air Vent from Powermax's Guangdong factory.[67]  Powermax further maintains nationwide distribution networks with other American retailers, such as Walmart and Lowe's.[68]  Although its motors are manufactured in China, Powermax boasts that

---

[62] *Id.* at 1029.

[63] *Asahi*, 480 U.S. at 114–16.

[64] ECF No. 87 at 64, 163 (sealed).

[65] *Id.* at 84–100.

[66] *Id.* at 90.

[67] ECF No. 86-1 at ¶¶ 4–14.

[68] ECF No. 87 at 165.

*all* of them are exported through its worldwide sales network and that its products have accounted for more than 10% of the American residential-fan market.[69]  All of the motors are also insured by a worldwide policy covering the United States.[70]

Powermax's conduct is not as extensive as Ford's in Montana and Minnesota nor as lacking as Asahi's in California, but it has, for decades, targeted the American market and entered contracts with nationwide retailers that explicitly contemplate entry into the Nevada market.  Such entry sufficiently relates to the claim in this case, as it involves a defective motor in a fan sold by Home Depot.  I thus find that the record establishes that Powermax purposefully directed its actions toward the United States and Nevada and that those actions relate to Air Vent's claim against it.  That is sufficient to satisfy the due-process requirements of personal jurisdiction.  So I deny Powermax's motion to dismiss.

**Conclusion**

IT IS THEREFORE ORDERED that Safeco's motion for partial summary judgment **[ECF No. 69] is GRANTED**.  IT IS FURTHER ORDERED that defendant Air Vent, Inc.'s motion for partial summary judgment **[ECF No. 62] is DENIED**.  The Clerk of Court is directed to ENTER PARTIAL SUMMARY JUDGMENT for plaintiff Safeco and against defendant Air Vent on the products-liability claim.

IT IS FURTHER ORDERED that third-party defendant Powermax's motion to dismiss **[ECF No. 77] is DENIED**.

This case proceeds to trial on Safeco's negligence claim against Air Vent and Air Vent's third-party claims against Powermax, Chien Luen, and King of Fans.  IT IS FURTHER

---

[69] *Id.* at 201–02; ECF No. 86-1 at ¶ 15.

[70] ECF No. 87 at 127–29.

1  ORDERED that **this case is REFERRED to the magistrate judge for a MANDATORY**

2  **SETTLEMENT CONFERENCE**.  The parties' obligation to file their joint pretrial order is

3  STAYED until 10 days after that settlement conference.

4

5  _____
   U.S. District Judge Jennifer A. Dorsey
   July 25, 2022

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23